(C. D. 854)

SHALOM & Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 31, 1944)

*Lane & Wallace* (*Samuel Isenschmid* and *William H. Fox* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Lawrence, Judges

Tilson, Judge: This suit against the United States presents for determination the question of the proper classification of certain imported gloves upon which duty was levied at 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as being in part of lace. The plaintiff claims the same to be properly dutiable at only 37½ per centum ad valorem under paragraph 919 of the act of 1930, as articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for.

It has been agreed by counsel for the respective parties that the gloves are composed wholly of cotton having a staple of less than 1⅛ inches in length, and that they were made by hand. This eliminates these two questions from further consideration.

This case is a retrial of the issue presented and decided in *Shalom & Co.* v. *United States*, C. D. 714, from which no appeal was taken.

Prior to the actual trial of this case counsel for the respective parties also agreed that the merchandise in case No. 340 invoiced as item No. 800, and described as "cotton net gloves," consists of gloves the same in all material respects as those which were the subject of *Shalom* v. *United States*, C. D. 714; that the record therein may be admitted in evidence herein; and that the exhibits in that case be received in evidence in this case under the same numbers or letters which they bore in the former case. Whereupon the plaintiff rested.

Counsel for the defendant then made the following statement:

However, it is the Government's position that the article before the court is a lace glove. It is also our position that the article before the court is in part of trimming. Either one of the circumstances would bring the gloves squarely within the language of paragraph 1529 of the Tariff Act of 1930, under which it was classified at 90 per centum ad valorem; in part of trimming or edging, to me the words are almost synonymous.

In the former case thirteen witnesses testified for the plaintiff and five for the defendant, while in the present case seven witnesses testified for the defendant and seven for the plaintiff in rebuttal. In addition thereto numerous exhibits were offered and admitted in evidence.

It should be observed that the defendant has abandoned the classification made by the collector as "articles in part of lace" and contends that the gloves are "lace gloves" or gloves in part of trimming or edging. The defendant, therefore, assumed the burden of establishing these claims without the usual presumption of correctness attaching to either.

One of plaintiff's witnesses testified that the involved gloves are made in substantially the following manner.

In making the gloves the worker uses a short stick, about 5 inches long, and a needle around which thread is wound; that with the use of the stick, needle and thread the girl worker begins to make the glove at a point where the hand meets the cuff; she then works down, making one side of the thumb first, then she works up and down again, making the next finger, then she works up and back until one side of the glove is finished; that when she gets to the last finger she makes the other side of the hand, and when she came to the last part of the hand she continued to make the cuff, making one side first and then the other side. This was one continuous operation from start to finish, with a continuous thread, and all done by hand; that what might be called "knots" which appear on the back of the hand of the glove and on the cuff, were made by the worker in the course of the production of the glove as she went along; that when she came to the point where the so-called "knots" appear, they were made right at that point and then the worker continued from there; that when both sides of the glove were finished, the worker joined them together, and then the glove was finished; that whatever work appears on the glove was done in the course of making the glove.

The above description of the process of making these gloves was given by a witness who had actually seen the work done and who brought the glove thus made into court and it was admitted in evidence as illustrative exhibit C. At the trial of the present case one witness attempted to refute the testimony as to the process used in making the glove, from an examination of the sample in evidence, and apparently without having seen this or any other glove made. We find, however, that such points in the manufacture of the glove as the two witnesses disagree upon are not material to a decision in this case.

In our former decision we stated that:

On the back of the hand portion of exhibit 1 appear two rows consisting of 11 dots or knots and one row consisting of 13 dots or knots and approximately 2 inches in length. It can scarcely be denied that these dots or knots are designs. The cuffs of exhibit 1 are constructed of much larger mesh than the hand portion and the threads appear to have been doubled. The additional threads in both the hand and cuff portions of the glove were placed there by the worker at the time she reached that particular point in making the glove, as hereinbefore set out. Whether or not these doubled threads form or produce such designs as rise to the dignity of lace designs is the question to be decided here.

It should also be stated that counsel for the defendant contends that the "dots" or "knots" serve to make the otherwise net gloves, lace gloves.

We also quote the following from our previous decision:

Although not expressed in identical language, all of plaintiffs' witnesses were in general agreement that the dots or knots or the grouping of threads on the back and on the cuff of exhibit 1 do not produce a design in any way like or similar to the design of any lace which they had ever seen or handled at any time.

\*      \*      \*      \*      \*      \*      \*

All of plaintiffs' witnesses who had bought and sold lace and net gloves over a long period of time and in substantial quantities agreed that gloves like or similar

to exhibit 1 had always been sold as net or filet net gloves and that they had never been sold as filet lace gloves or as lace gloves of any kind.

The statements contained in the above quotations are equally applicable to the record in the present case.

One of defendant's witnesses expressed the opinion that exhibit 1 was a lace glove, but he also stated that filet net by itself is a lace, and that if exhibit 1 were composed entirely of filet mesh, it would nevertheless be a lace glove. Another of defendant's witnesses, after testifying that exhibit 1 was a lace glove, testified further as follows:

A. The glove is a filet mesh, you see, but as soon as it is made in a particular shape, like this, or any other particular shape, you know it is not a net any more. A net is something flat, you see. A net is something flat, and as soon as you have something shaped it is a lace already. It is made for a special purpose.

X Q. In other words, if the filet mesh, or net that appears in there was made straight, we will say by the yard, you would say it was a filet net?—A. I would call it a hand-made filet net—hand-made.

X Q. Yes, but the minute you do the identical work in connection with forming the fingers and the hand of a glove, it then automatically becomes lace?—A. It becomes a lace, yes.

X Q. You want to be understood that the mere shaping it into any article, into a stocking, or into a glove, or anything other than a flat form, the mere shaping of that work converts it into a lace?—A. Yes, sir.

Another one of defendant's witnesses, when asked if a plain mesh without embellishment or anything added to it, is filet lace, replied "I should think so." Another of defendant's witnesses stated that he regarded the mesh or net in exhibit 1 as filet lace from the very start, that if that kind of mesh work were made plain by the yard it would still be filet lace, and also that if plain mesh were made into a glove that such a glove would be a lace glove.

A number of defendant's witnesses testified that there was no such thing as a "special lace design," but invariably admitted that certain designs were lace designs and that there were innumerable lace designs.

Counsel for the plaintiff, in rebutting the testimony offered by the defendant, attempted to prove or establish commercial designation. In the case of *Passaic Worsted Co.* v. *United States*, 17 C. C. P. A. 459, our appellate court made the following observation with reference to establishing commercial designation:

At the risk of unnecessary reiteration, we repeat a suggestion as to this kind of evidence frequently heretofore made by us. If, in the case at bar, it was sought to establish commercial designation of the imported machines as textile machinery, *before attempting to do so it must be legally admitted that they have a commercial designation which differs from their common designation and that, under the common designation, they are not textile machinery.* Otherwise, and if they are commonly known as textile machinery, no occasion for proof of commercial designation exists. [Italics ours.]

It has never been clear just what procedure was intended to be covered by the words "legally admitted" in the above quotation, and

it has been a rather perplexing problem before this court. In the present case, however, there appears, to have been no admission of any kind that the word "laces" has a commercial designation which differs from its common designation. There being no admission of any kind, there could certainly be no legal admission of anything in this case. Under the rule laid down by our appellate court we must, therefore, hold that there has been no commercial designation established in this case. However, the testimony given by these witnesses is available to be considered and weighed as any other testimony.

Although counsel for the defendant, at the trial of this case, stated:

It is also our position that the article before the court is in part of trimming. * * * in part of trimming or edging, to me the words are almost synonymous.

it is to be noted that in his brief filed herein no contention is made or argument advanced that the gloves in question are in part of trimming or edging, but sole reliance seems to be placed upon the contention that the gloves are lace gloves. We shall, therefore, consider as abandoned the original contention that the gloves are in part of trimming or edging. Considerable evidence was offered by the defendant in an effort to show that the gloves are in part of trimming or edging and the plaintiff offered much testimony in contradiction. However, the record as a whole definitely fails to establish that the gloves are in any part of trimming or edging.

Collective illustrative exhibit E was admitted in evidence as representing what is known, recognized, and dealt in generally as filet laces. The testimony of plaintiff's witnesses to this effect was not contradicted by the defendant's witnesses. A comparison of said exhibit E and exhibit 1 clearly demonstrates the dissimilarity between the two articles. Likewise a comparison of illustrative exhibit J, representing point d'esprit net, illustrative exhibit K, representing embroidered machine-made net, and illustrative exhibit L, representing machine-made filet dotted net, with exhibit 1 strongly tends to confirm our view that the involved gloves are net gloves and that they are not lace gloves.

After a careful examination of the record, including an examination and inspection of the samples and exhibits, for the reasons hereinbefore stated we find that the weight of the evidence establishes that the involved gloves are not lace gloves, and that they are not gloves in part of edgings or trimmings, but are in fact figured net gloves. They are, therefore, not dutiable under paragraph 1529 (a) of the act of 1930.

Since the only provision in said paragraph 1529 which could be held to cover nets or nettings is the provision for fabrics and articles made on a net machine, and since it has been agreed in the present case that the gloves were made entirely by hand, it is clear that they are not fabrics and articles made on a net machine.

We therefore hold the merchandise in case No. 340 invoiced as item No. 800, and described as "cotton net gloves," to be properly dutiable at only 37½ per centum ad valorem under paragraph 919 of the act of 1930, as alleged by the plaintiff.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.