(C. D. 1889)

E. C. CARTER & SON, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 11, 1957)

*Jordan & Klingaman; Brooks & Brooks (J. Joseph McDermott* of counsel) associate counsel; for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Richard H. Welsh* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This suit challenges the classification of the collector of certain imported merchandise as "Other Nets" and the consequent levy of duty thereon at the rate of 45 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Plaintiff claims said merchandise to be properly dutiable at the rate of 25 per centum ad valorem under said paragraph 1529 (a), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, as lace, made on a bobbinet-Jacquard machine.

The involved paragraphs, as modified, are as follows:

[5] All fabrics and articles, plain or figured, made on a lace or net machine:
  Nets and nettings, not embroidered:
        Made on a bobbinet machine and wholly or in chief value of cotton:
  *        *        *        *        *        *        *
        Other_____ 45% ad val.
[3] Laces, etc., if made on a bobbinet-Jacquard machine, whether or not embroidered, and however provided for in this subparagraph (a), but not including veils or veilings, 25% ad val.

At the trial of this case, a representative sample of the subject merchandise was admitted in evidence and marked plaintiff's exhibit 1; a commission, containing the testimony of plaintiff's witness Bernard Godber, was admitted in evidence as plaintiff's exhibit 2; and three samples of merchandise, illustrative of lace, were admitted in evidence as plaintiff's illustrative exhibits 3, 4, and 5. In addition, plaintiff offered the testimony of five witnesses and the defendant offered the testimony of two witnesses.

Counsel for the parties agreed that plaintiff's exhibit 1 represents in all material respects item No. 35087, covered by the protest at bar, and, further, that this sample is composed wholly of cotton. When witness Bernard Godber was asked whether or not the machine used to make the point d'esprit net, item No. 35087, was a bobbinet machine with a Jacquard attachment, he answered: "Definitely is a bobbinet machine with a Jacquard attachment." This testimony is nowhere denied or contradicted.

It will be observed that the provision under which classification was made is for nets and nettings, not embroidered, made on a bobbinet machine, while the provision under which plaintiff claims is for laces made on a bobbinet-Jacquard machine. Certainly, a "bobbinet-Jacquard machine" is more than a "bobbinet machine." That there is a distinction between a "bobbinet machine" and a "bobbinet-Jacquard machine" was clearly recognized by the trade negotiators when, in the two provisions set out above, they made provision in one for nets, made on a "bobbinet machine" and, in the other, for laces, made on a "bobbinet-Jacquard machine." This lends no support to the presumption of correctness attaching to the classification made by the collector. On the record herein and in view of the wording of the two provisions in question, we are of opinion that all presumption in favor of the correctness of the collector's classification has been destroyed.

In connection with the above, we quote the following testimony of witness Bernard Godber:

Q. * * * please state, based on your experience, whether or not the machines which make nets with no pattern or design have Jacquard attachments affixed thereto.—A. They have not. No.

Q. * * * please state, based on your experience, the reason for this answer.—
A. The Jacquard machine is not attached to a bobbinet machine unless the manufacture of spot nets is required and then if that machine is required for making plain bobbinet, no design, the Jacquard is not brought into operation. A bobbinet machine required solely for plain bobbinet has no Jacquard attachment.

The above observations find ample support in the case of *United States* v. *Sutherland International Despatch*, 21 C. C. P. A. (Customs) 264, T. D. 46790, and cases therein cited. However, it is not necessary for us to rest our decision upon the above point.

Plaintiff's exhibit 1 consists of a concededly net base. Upon this net base appear certain square dots or spots. In one direction, these dots or spots appear at intervals of approximately three-fourths of an inch, and, in the opposite direction, these dots or spots appear at intervals of approximately one-half inch. As to how these dots or spots are produced, the witness testified:

The Jacquard attachment transforms the direction of the bobbinet threads and by a determined number of motions makes the spots during which time the making of the plain net stands still. After the spots are made, the Jacquard ceases to operate and the bobbinet machine makes plain bobbinets.

The record definitely establishes that these dots or spots are inwrought and that they are forms, figures, or designs. Plaintiff's witness King testified as follows, regarding plaintiff's exhibit 1:

Q. I show you Exhibit 1, Mr. King, and ask you, based on your experience, whether or not this exhibit comes within your understanding of the term lace?—
A. Yes, that spot effect is put on by Jacquard, the same as lace is made.

Q. Why do you say it comes within your understanding of the term lace, Exhibit 1?—A. Because it is decoration and pattern.

Q. Does the decoration and pattern serve any utilitarian purpose?—A. Ornamental, like all the lace patterns are ornamental.

\* \* \* \* \* \* \*

Q. Based on your experience and in your opinion does Exhibit 1, does that differ in any way from Illustrative Exhibits 3, 4, or 5, or are they the same thing?

\* \* \* \* \* \* \*

THE WITNESS: It is an ornamental design, just a matter of degree for ornamentation.

On cross-examination of this witness, counsel for the defendant read to him the following definition from Webster's New International Dictionary, 1956, page 1904:

point d'esprit—a fine cotton net with a woven square dot—used especially for dresses.

The witness was then interrogated and answered as follows:

Does Exhibit 1, or is Exhibit 1 a fine cotton net?—A. Yes.

X Q. Is it woven with square dots?—A. Yes.

Referring to plaintiff's exhibit 1, and with particular reference to the dots or spots thereon, plaintiff's second witness testified that:

A. This that was put in only for one purpose, for eye appeal to sell it, to make it desirable. It is the only purpose it has. It has no other purpose.

Q. For eye appeal? What do you mean eye appeal, to adorn it?—A. To adorn it.

This witness further testified that "Eye appeal is something to make it more desirable," that it does not serve any utilitarian purpose, and that it is strictly ornamental; that the pattern or design was preconceived or planned before the pattern is put on exhibit 1; that the pattern or design ornaments exhibit 1; "that is all it is put on for" and it serves no utilitarian purpose.

On cross-examination, this witness was read the definition of point d'esprit, heretofore quoted, and stated that exhibit 1 is a fine cotton net and that it contains woven square dots.

Plaintiff's third witness testified that exhibit 1 has an embellishment on it, or a figure or motif, based on a mesh base or a net base, which does not serve any utilitarian purpose other than to enhance its appearance and make it more acceptable to the trade and bring it into a different category where it can be used; that the dots or spots, forms, figures, or designs on the net foundation of exhibit 1 definitely embellish it; that the function of a Jacquard on a bobbinet-Jacquard machine is to produce a motif or some other embellishment.

On cross-examination, this witness testified that he now sells merchandise like exhibit 1 and always has sold it as point d'esprit and point d'esprit net. This witness also testified as follows:

A. The ones that I have seen at that time were more or less in the silk family. They were called the point d'esprit laces.

When asked on redirect examination:

R. Q. Would you look at Exhibit 3, please, and Exhibit 1. How did Exhibits 1 and 3 compare with point d'esprit laces that you saw in pattern or design for ornamentation?

he answered:

They are definitely in the same family.

Plaintiff's next witness testified that exhibits 1, 3, 4, and 5 all have designs or patterns, and all those designs ornament those exhibits. On cross-examination, this witness testified that exhibit 1 is a concrete illustration of what he knows as a point d'esprit net. On redirect examination, the witness was read the following definition of a "net" from Webster's New International Dictionary, 1933, page 1451:

net, 3. Anything wrought or woven in meshes; any of various open-weave fabrics.

The witness then stated that he agreed with that definition and that exhibit 1 differs from that definition, because of the pattern in it, meaning the dots.

Plaintiff's next witness testified that exhibits 1, 3, 4, and 5 were definitely made under one operation; "* * * all have a design or pattern, all have a preconceived in-wrought pattern or design, which ornament each one of the exhibits," "* * * except that some are more embellished than others." On cross-examination, this witness testified that he had bought and sold merchandise like exhibit 1 in the United States under the name of point d'esprit and point d'esprit net and that was what he had always known it as; that he would not call the net portion of exhibit 1 a fine net, but a rather coarse one, and that it contains woven square dots. This witness also testified that exhibit "1 is a lace, inasmuch as the design has been wrought into the net in exactly the same manner as these," referring to exhibits 3, 4, and 5.

Defendant's first witness testified that he was familiar with exhibit 1, having bought and sold it over a period of from 12 to 15 years under the designation of point d'esprit net, sometimes as point d'esprit; that, to him, the two terms meant practically the same thing; that exhibit 1 is a fine cotton net, and it contains square dots. This witness refused to dignify the dots on exhibit 1 by calling it an ornamental design or pattern. When asked if the dots on exhibit 1 were of such character that they ornament the net fabric on which they appear, he replied that "Again I'd say that I wouldn't dignify the dot by calling it ornamented," "Because it doesn't have sufficient character to become an ornamentation." When asked if he would say that exhibit 1 has no ornamentation, he replied:

I'd have to in a very very broad sense that divorcing myself from my business, that I'd have to possibly agree that it has ornamentation.

This witness was further interrogated and answered as follows:

X Q. Are the dots on Exhibit 1 in-wrought on the fabric?—A. I have to examine it before I answer it. The answer is yes.

    *       *       *       *       *       *       *

X Q. Which is more ornamental, in your opinion, a plain net or a point d'esprit net?—A. A point d'esprit would be, I should say.

X Q. Exhibit 1 would then be more ornamental than a plain net with no figures, is that correct?—A. That is true.

Defendant's second and last witness, Alfred Kohlberg, testified that he was familiar with merchandise similar to exhibit 1, having sold it in the markets of the United States under the designation of point d'esprit net; that exhibit 1 is a fine cotton net, containing woven square dots; that he did not consider the dots on exhibit 1 to be "lace, designs, figures or patterns," "Because it doesn't make the pattern that will be recognized even by any stretch of the imagination as a lace design;

most laces—most lace designs are flower, or even those that don't fit that would have to have some recognizable pattern. There is just an overall design and never recognized as a lace design." When asked if he considered the square dots on exhibit 1 to be ornamental designs, figures, or patterns, the witness replied:

A. Well, they ornament the net, I mean beyond that of a plain net, but not ornament it.

On cross-examination, the witness was interrogated and answered as follows:

X Q. Can you tell from an examination of Exhibit 1 whether the said exhibit has a preconceived in-wrought pattern or design?—A. Yes, it has the dot.

X Q. It has an in-wrought preconceived pattern or design, the dot, is that correct?—A. That is correct.

X Q. Does that dot ornament Exhibit 1, in your opinion?—A. You mean ornament it, as against the plain net without the dot?

X Q. Yes.—A. Yes, it does.

X Q. Does it, as you described, the dot on Exhibit 1, serve any utilitarian purpose?—A. No.

\*       \*       \*       \*       \*       \*       \*

X Q. Based on your experience how would you define the term lace?—
A. I would define the term lace as meshed fabric, with a recognizable ornamental design in-wrought or wrought on it.

X Q. Which would ornament the fabric, is that correct?—A. Yes.

This record definitely establishes that exhibit 1 is a meshed fabric with inwrought patterns or designs, which are ornamental or are of such a character as to ornament the net fabric on which they appear.

In *Shalom & Co.* v. *United States*, 10 Cust. Ct. 6, C. D. 714, this court held the merchandise there involved dutiable as net gloves, rather than lace gloves, with a consequent reduction in duty from 90 per centum ad valorem under paragraph 1529 to 37½ per centum ad valorem under paragraph 919 of the Tariff Act of 1930. In that case, plaintiff's witness testified that the gloves there involved were made in substantially the following manner:

In making the gloves the worker uses a short stick, about five inches long, and a needle around which thread is wound; that with the use of the stick, needle and thread the girl worker begins to make the glove at a point where the hand meets the cuff; she then works down, making one side of the thumb first, then she works up and down again, making the next finger, then she works up and back until one side of the glove is finished; that when she gets to the last finger she makes the other side of the hand, and when she came to the last part of the hand she continued to make the cuff, making one side first and then the other side. This was one continuous operation from start to finish, with a continuous thread, and all done by hand; that what might be called "knots" which appear on the back of the hand of the glove and on the cuff, were made by the worker in the course of the production of the glove as she went along; that when she came to the point where the so-called "knots" appear, they were made right at that point and then the worker continued from there; that when both sides of the

glove were finished, the worker joined them together, and then the glove was finished; that whatever work appears on the glove was done in the course of making the glove.

In our opinion in the *Shalom* case, *supra*, we said:

* * * Many things have lace-like appearances which do not answer to the provision for laces here under consideration. If we should hold the involved gloves to be lace, then we would feel constrained to hold any piece of net upon which appeared a few dots or knots to be lace, and thus completely invade the field of figured nets.

The weight of the evidence in this case shows that the doubled threads forming the dots or knots on the back of the hand and on the cuff of the instant gloves do not constitute lace designs. Therefore the gloves are not lace gloves, but figured net gloves.

This decision was not appealed, but the importer was required to try another case on the same merchandise and subject matter. *Shalom & Co.* v. *United States*, 12 Cust. Ct. 200, C. D. 854. The record in the first *Shalom* case was incorporated as a part of the record in the second *Shalom* case. In both of said decisions, this court expressed the opinion that the dots or spots on the net base or foundation of the net gloves there involved did not make said gloves lace gloves, or gloves in part of lace. In reversing the decision in the second *Shalom* case, the Court of Customs and Patent Appeals, in *United States* v. *Shalom & Co.*, 33 C. C. P. A. (Customs) 29, C. A. D. 311, held as follows:

In the instant case, the trial court held that the weight of the evidence established that the involved gloves are not lace gloves, but are, in fact, figured net gloves, and, accordingly, held that the gloves in question were properly dutiable at 37½ per centum ad valorem under paragraph 919, *supra*.

It is contended here by counsel for the Government that the involved gloves are articles in part of lace within the common meaning of the term "lace"; that appellee failed to establish commercial designation, that is, that in the trade and commerce of the United States the term "lace" has a meaning which differs from its common meaning, and that such meaning is definite, uniform, and general throughout the United States and excludes the articles in question; and that, therefore, the trial court erred in holding that the involved gloves were not articles in part of lace within the purview of paragraph 1529 (a), *supra*.

Counsel for appellee (importer), on the other hand, contend that although the involved gloves may be in part of lace within the common meaning of the term "lace" as defined by the lexicographers, we should accept the views of the expert witnesses who testified for appellee to the effect that they are not in part of lace but are filet or figured net gloves; that the dictionary definitions of the term "lace" are too broad, being sufficiently broad, in fact, to include figured net; that "not only is a pattern or design essential to constitute an article lace, but such pattern or design must be of sufficient importance to characterize as lace the article on which it appears"; and that "The degree of ornamentation necessary to constitute lace is a question of fact to be determined by testimony."

Lace is defined by the lexicographers as follows:

LACE. * * * the name applied to ornamental openwork formed of threads * * *, looped or plaited or twisted together by hand, (1) with a

needle, when the work is distinctively known as "needlepoint lace"; (2) with bobbins, pins and a pillow or cushion, when the work is known as "pillow lace"; and (3) by steam-driven machinery, when imitations of both needlepoint and pillow laces are produced. Lace-making implies the production of ornament and fabric concurrently. *Without a pattern or design the fabric of lace cannot be made.* [Italics ours.] (Encyclopaedia Britannica, 11 ed., vol. 16, p. 37.)

*Lace, n.* 1. A delicate openwork fabric or network of threads * * * *usually ornamented with inwrought or applied figures or patterns.* It is made both by hand and by machinery. * * * imitation lace, any lace made by machinery. [Italics ours.] (Funk & Wagnalls New Standard Dictionary.)

*lace, n.* * * * 5. a An *openwork figured tissue* made from fine thread, * * * so manipulated as to form the *patterns and ground of that fabric either in one continuous operation or in separate pieces which are afterward joined.* [Italics ours.] Handmade, or "real" laces are made by the needle, (*needlepoint,* or *point, lace*), or on a pillow with bobbins and pins (*bobbin,* or *pillow, lace*) or, less often, by crocheting or knotting. In machine-made lace, the threads are arranged sometimes as in handmade lace, but sometimes differently in an attempt to produce the same effect. (Webster's New International Dictionary.)

In the Summary of Tariff Information, 1929, prepared by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, at page 2025, lace is defined as follows:

Lace is *ornamental network* made by intertwisting threads to form a pattern. When made by hand it is termed "real" or "point" lace, as distinguished from machine-made lace, sometimes known as imitation lace. Modern lace is mainly machine-made, the principal machine used being the Levers, particularly the type of Levers known as the "go-through." [Italics supplied.]

Lace was similarly defined in the Summary of Tariff Information, 1920, page 553, and in the Summary of Tariff Information, 1921, page 1156.

We are unable to agree with counsel for appellee that the definitions of lace, hereinbefore quoted, are too broad, although some of appellee's witnesses so testified. It should be recalled that none of those witnesses was able to give a definition which was satisfactory even to him. The most that can be gleaned from the testimony is that those witnesses were of opinion that a design more ornamental than those on exhibit 1 is required in order to give a fabric the character of lace.

Whether the inwrought patterns or designs appearing on the back of the hand portion and the wrist portion of exhibit 1 are ornamental or are of such character as to ornament either of those portions is a question of fact. See *United States* v. *Mutual China Co. et al.,* 9 Ct. Cust. Appls. 232, T. D. 38202, 37 Treas. Dec. 225. However, in view of the dictionary definitions of lace, hereinbefore quoted, and the quoted definition of lace appearing in the Summary of Tariff Information, 1929, which was called directly to the attention of the Congress and which was before that body at the time of the enactment of paragraph 1529 (a), *supra,* we are of opinion that when it has been established, as it has in the instant case, that inwrought patterns or designs are ornamental or are of such character as to ornament the net fabric on which they appear, they are of sufficient importance to characterize as lace at least that portion of the fabric on which they appear, and that the degree of ornamentation is immaterial and is, therefore, not a question of fact to be determined by testimony as argued by counsel for appellee.

Owing to the fact that it clearly appears from such testimony of record as there is on the subject that the preconceived inwrought figures or designs on exhibit 1 are ornamental and ornament the exhibit, it is immaterial, so far as the common meaning of the term "lace" is concerned, what degree of ornamentation they possess. Furthermore, it is well settled that the common meaning of a tariff term is not a question of fact but a question of law. *United States* v. *Florea & Co., Inc.,* 25 C. C. P. A. (Customs) 292, 296, T. D. 49396.

We are of opinion that those portions of Exhibit 1 which are ornamented with preconceived inwrought ornamental figures or designs are lace within the common meaning of that term, and that, although the lace had no separate and independent existence as such, the involved articles, of which exhibit 1 is representative, are in part of lace within the purview of paragraph 1529 (a), *supra.* See *Alfred Kohlberg, Inc.* v. *United States,* 27 C. C. P. A. (Customs) 354, C. A. D. 111.

\*       \*       \*       \*       \*       \*       \*

In view of the fact that the Congress has provided in paragraph 1529 (a), *supra,* that articles in part of lace "by whatever name known" shall be dutiable thereunder, and as we hold on the record presented that the involved articles are in part of lace, it is immaterial by what name they are bought and sold and designated in the trade and commerce of the United States. See *Kotzin Bros.* v. *United States,* 14 Ct. Cust. Appls. 99, 104, T. D. 41589.

For the reasons herein stated, we are constrained to disagree with the conclusion reached by the trial court.

The judgment is *reversed.*

We are of opinion, and so hold, that when it has been established, as it has in the instant case, that the inwrought patterns or designs on the involved merchandise are ornamental or are of such character as to ornament the net fabric on which they appear, they are of sufficient importance to characterize as lace the fabric on which they appear and that the degree of ornamentation is immaterial.

Since the record herein brings the involved merchandise squarely within the pronouncements made by the Court of Customs and Patent Appeals in the *Shalom* case, *supra,* we have no course left open except to hold the involved merchandise, represented on the invoice as item No. 35087, dutiable as laces, made on a bobbinet-Jacquard machine, whether or not embroidered, however provided for in paragraph 1529 (a) of the Tariff Act of 1930, as modified, *supra,* at the rate of 25 per centum ad valorem, as alleged by the plaintiff.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.