(C. D. 749)

WHEELER & MILLER v. UNITED STATES

United States Customs Court, Third Division

(Decided March 15, 1943)

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Francis X. O'Donnell, Jr.*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on certain cheese invoiced from Denmark and imported from Sweden on March 14, 1940. The cheese is invoiced as "Danish Swiss Type cheese" and the collector assessed duty thereon at 7 cents per pound under paragraph 710 of the Tariff Act of 1930 under the provision for "cheese and substitutes therefor." The plaintiff claims that the merchandise is dutiable at 5 cents per pound, but not less than 20 per centum ad valorem, under the following provision in the trade agreement with Finland, which is published in T. D. 48554:

Cheese having the eye formation characteristic of the Swiss or Emmenthaler type; * * *.

In a letter by the President, which accompanies the proclamation, the rates of duties in the trade agreement with Finland are granted to the products of Denmark.

At the trial of the instant case, it was agreed between counsel that the record in *Wheeler & Miller* v. *United States*, 6 Cust. Ct. 252, C. D. 475, be incorporated and made a part of the record in this case. The same question was involved in that case and the decision of the court rested on the testimony of two witnesses called by the plaintiff. The first witness was Mr. Sofus Winther who is the president of the importing firm and had been connected therewith for 4 years. He also had 3 or 4 years of experience in the cheese business prior to his connection with the importing firm. He testified that, in the course of his experience, he had become familar with the eye formation in imported Swiss and Emmenthaler cheese; that the eye formation is the eyehole in the cheese which is caused by the formation of gas. The witness produced a photograph of a piece of cheese of the character covered by the importation, together with a 12-inch ruler. This photograph was admitted in evidence and marked illustrative exhibit A, 5930–K.

The witness testified that the imported cheeses covered by the importation had the eye formation characteristic of Swiss or Emmenthaler cheese. On cross-examination the witness stated that he had not seen Swiss cheese made but he had become familiar with it by examining such cheese for 5 or 6 years; that the eye formation in the cheese is produced in the cooking process; that there are different grades of Swiss cheese, depending on the size of the eye formation and the core of the cheese; that there is not a standard size for the holes in such cheese, as they are all sizes; that Swiss cheese is the American expression for Switzerland cheese.

The next witness was Mr. Thomas Hindmarsh who is employed as secretary of the importing firm and had been in the cheese business since 1936. He testified that he became familiar with the eye formation in Swiss cheese from working in the store; that he examined a sample of each importation of cheese received by his firm, including the shipment under consideration; that all of the samples had an eye formation similar to the Swiss or Emmenthaler type of cheese; that the eye formation is just a round hole with smooth interior; that he had seen imported Swiss cheese which had holes similar to those in the cheese herein involved, "but in this cheese the holes are scattered here and there, some more than other"; that the photograph, illustrative exhibit A, shows an eye formation that is characteristic of imported Swiss cheese.

On this testimony the court found that the imported cheese had an eye formation characteristic of Swiss or Emmenthaler cheese and held that the merchandise was dutiable at 5 cents per pound, but not less

than 20 per centum ad valorem, in accordance with the provisions of the trade agreement with Finland.

The defendant called three witnesses, in, the instant case. The first witness was Mr. Adolph Molinari who has been connected with an importer of cheese in the United States for 13 years and before that was a wholesale dealer in cheese in Italy. He testified that he had purchased and sold Swiss or Emmenthaler cheese, and, while in business in the United States, had imported cheese from Denmark; that, when he buys and sells Swiss or Emmenthaler cheese, the first thing he tries to see in the cheese is how the eyes are developed; that in the better kind of such cheese the eyes are large and more numerous. The witness was shown illustrative exhibit A and testified that "I would not buy that for Swiss cheese" "because the eyes are small and not enough numerous"; that the eyes characteristic of Emmenthaler are large in the center; that he does not see any of the characteristics of the eye formation of Emmenthaler or Swiss cheese in the picture, illustrative exhibit 1.

On cross-examination the witness testified that Swiss cheese has eyes of different sizes, larger and smaller; that the best quality has eyes which are large and numerous but in the second quality the eyes are smaller; that he buys Swiss cheese of the best grade or quality and has had no experience with other grades.

On redirect examination the witness was asked and answered the following question:

R. Q. Do you consider Danish loaf cheese as Swiss or Emmenthaler cheese?— A. You cannot confuse Emmenthaler and Danish cheese. Danish cheese has smaller and fewer holes. Emmenthaler has numerous and large holes.

The next witness was Mr. William H. Roussel who has been in the cheese business for 25 years. He testified that in the first grade of Emmenthaler cheese the holes run from ½ to about 3 inches; that in the first-grade Emmenthaler cheese he first looks at the seal on the loaf and then at the eye formation; that if there is a second quality Emmenthaler cheese the holes are smaller and run from ½ inch to 1½ inches; that inferior grades, which are called "Split" do not have an eye formation; that the holes in Swiss or Emmenthaler cheese are slightly irregular, sometimes very irregular and sometimes two holes are in contact with each other; that, when the holes are not larger than ½ inch, the cheese is called "blind cheese." The witness was then asked if blind cheese is bought and sold as Swiss or Emmenthaler cheese and he answered "No, they would sell in the market as genuine Swiss because it is almost blind cheese." The witness was then shown illustrative exhibit A and testified as follows:

Q. Did you ever buy and sell cheese with the eye formation appearing in that exhibit as Swiss cheese?—A. I have seen an American Swiss cheese with that eye formation manufactured in Wisconsin.

Q. Is that bought and sold as Swiss or Emmenthaler cheese?—A. Well, it is manufactured with some other method. Generally they call it American Swiss cheese.

Q. They buy and sell it as American Swiss cheese?—A. Yes. Domestic Swiss they sell it as. I have seen Danish loaf similar to this and I have seen a domestic cheese what they call Gruyer, which is similar to this.

Judge DALLINGER. Did you ever see Finnish cheese?

The WITNESS. Yes.

Judge DALLINGER. Does that look like Finnish cheese?

The WITNESS. Somewhat.

By Mr. O'DONNELL:

Q. Would you say from your examination of that picture that the cheese represented thereon has an eye formation characteristic of Swiss or Emmenthaler cheese?—A. No, it has not.

Q. Why not?—A. Because the eye formation is too small and too perfectly worked.

Q. How about the number of holes?—A. The number of holes is a very small quantity. Genuine Swiss or Emmenthaler would have a great many holes. Finnish cheese is somewhat like this. I would consider this somewhat like the Finnish cheese or the Danish loaf.

On cross-examination the witness was asked and answered the following questions:

X Q. You have seen what you call Finnish-type Swiss cheese?—A. What I have seen here is somewhat on that order. It has very small holes.

X Q. Could you tell us just how small holes in Swiss cheese are made?—A. If it is genuine Swiss, what we call genuine Swiss or Emmenthaler type, that cheese has very small holes and is what we call blind cheese.

X Q. Can you give us some idea how small those holes are?—A. ¼ inch hole would be in the blind cheese and they might run to ½ inch.

X Q. Have you seen them any smaller than ¼ inch?—A. I haven't seen any genuine Swiss with such small holes.

X Q. Are you familiar with second quality Swiss cheese?—A. The second quality has larger holes. In the second quality the holes would run from ¾ inch, maybe up to 1½ to 2 inches.

The next witness called by the defendant was Mr. Oliver A. Ghiggoile who has been connected with the Bureau of Dairy Service of the Department of Agriculture for 18 years. He testified that the manufacturers of Swiss cheese in the United States are required to secure a special permit and the application for the permit must describe the process for making the cheese; that he had inspected imported Swiss and Emmenthaler cheese on the average of 8 or 10 times a year. The witness was asked and answered the following questions:

Q. Would you mind explaining a little more in detail about the eye formation characteristic of the Swiss and Emmenthaler type?—A. The eye formation in Swiss cheese, that is a good cheese, has numerous eyes, irregular in size as well as in form, and frequently you will find two or three holes that run together.

Q. What is the size of the holes in the eye formation of Swiss cheese?—A. They vary. I would say they run from ¾ of an inch to two inches, possibly more.

Q. Are there various grades of Swiss or Emmenthaler cheese?—A. Officially no. but there are different grades known by the trade.

Q. You have examined those different grades?—A. We have but we have been confined to three specific grades; that is, cheese with the characteristic holes. which is known as Aniser, then the cheese with the eye formation that is the same, and then what we know as blind cheese that has no holes at all or very small holes.

The witness was shown illustrative exhibit A and testified that in his opinion the eye formation indicated in the photograph was not characteristic of the Swiss or Emmenthaler type because the holes are too few in number, are too long in size, are uniformly small, and appear only in the center of the cheese.

On cross-examination the witness testified that the large holes in Swiss or Emmenthaler cheese appear in toward the center of the cheese and that the holes nearer the rind are smaller and that a great many of the small holes are regular spheres.

On redirect examination the witness explained the kind of holes which he considered characteristic of Swiss or Emmenthaler cheese. His testimony is as follows:

R. Q. In your direct examination you testified, I believe, that the holes in Swiss or Emmenthaler cheese run from ¾ of an inch to perhaps a little more than 2 inches?—A. The characteristic ones, yes.

R. Q. Those ¾-inch holes, are those the ones you refer to as being near the rind?—A. No, they are smaller.

R. Q. Then I take it that the holes that you referred to as being near the center are those which are characteristic of the eye formation, is that correct?—A. Yes.

R. Q. And those were the holes which range from ¾ of an inch to perhaps 2 inches or a little more than 2 inches, is that right?—A. Yes.

In rebuttal, the plaintiff called Mr. S. A. Winther who appeared as a witness in the incorporated record. He testified that he had been importing genuine Swiss cheese for 10 or 11 years and also what is called "Munster" and also Finnish-type Swiss cheese. He testified as follows:

Q. With special reference to this Finnish-type Swiss cheese, will you describe what is meant by that?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A. Well, the holes are rather uniformly small in Finnish-type Swiss cheese. Otherwise the flavor and the taste is somewhat the same as genuine Swiss cheese. In the Finnish-type Swiss cheese you have small holes that run ½ to 1 inch, in that line.

Q. Would you look at the exhibit in the case which was incorporated herein, Mr. Winther, and compare the holes in that exhibit with this cheese you understand to be Finnish-type Swiss cheese?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

A. You cannot compare them because in the Finnsh-type Swiss cheese the holes are smaller. In the Emmenthaler type it has larger holes. The holes in this cheese are smaller; they are exactly like the Finnish-type cheese.

We have reviewed the evidence at length because counsel for the defendant argues so strenuously that the record now before the court establishes that the imported cheese does not have the eye formation characteristic of Swiss or Emmenthaler cheese. We are of opinion, however, that the weight of evidence does not support that contention.

Much of the testimony introduced by the defendant relates to a comparison of the eye formation in the imported cheese with the large eyes found in the center of first-grade Swiss or Emmenthaler cheese, but the framers of the provision in the trade agreement did not make the eyes in the first-grade Swiss or Emmenthaler cheese or the large eyes in the center of such cheese the test to be applied. The provision is broad enough to refer to the eyes in any grade of Swiss or Emmenthaler cheese and to any of the eyes in such cheese, whether in the center or near the rind. If the eyes in the imported cheese have the characteristics of any of the eyes in any quality of Swiss or Emmenthaler cheese, we are of opinion that it is within the provisions of the trade agreement.

Some of the testimony is directed also to a comparison of the eyes in the imported cheese herein involved with the eyes in *imported* Swiss or Emmenthaler cheese, but the framers of the provision in the trade agreement did not specify that the cheese must have the eye formation characteristic of *imported* Swiss or Emmenthaler cheese to come within the provision which is broad enough to refer to the eyes in American Swiss cheese. Witness Roussel testified that the eyes in American Swiss cheese are of the same size and character as those shown in illustrative exhibit A.

Some of the defendant's testimony is directed also to the question as to whether or not the imported cheese is in fact Swiss or Emmenthaler cheese, but the provision in the trade agreement is not so limited. It refers to any cheese which has the characteristic eye formation of Swiss or Emmenthaler cheese and is not limited to genuine Swiss or Emmenthaler cheese. Witness Ghiggoile testified that makers of Swiss cheese in the United States have to show their formula before they can get a permit to make it, but the provision in the trade agreement has no reference to a formula and there is no indication that the provision refers to any specific kind of cheese. The only specification is that, in order to come within the provision, the cheese must have eyes characteristic of Swiss or Emmenthaler cheese.

It is shown also that the so-called "blind cheese" either has no eyes, as stated by witness Ghiggoile, or has small eyes from ¼ to ½ of an inch in diameter, as testified by witness Roussel. The sizes of the eyes shown on illustrative exhibit A are within the range described by the witness in the so-called "blind cheese." The testimony is that the so-called "blind cheese" is sold as genuine Swiss. We construe the testimony as indicating that blind cheese is made by the Swiss cheese formula but that it did not develop the large eyes characteristic of those in the center of the first- or second-grade Swiss or Emmenthaler cheese. Nevertheless, it appears to be a grade of Swiss cheese.

The testimony of witness Roussel shows that the cheese herein

involved looks like Finnish cheese and the testimony of witness Winther, in rebuttal, shows that the eyes in the Finnish-type Swiss cheese are the same size and have the same characteristics as the eyes in the cheese herein involved. The trade agreement under consideration was made with Finland and it must be assumed that the Finnish product which the authors of the trade agreement had under consideration was the Finnish-type Swiss cheese made in Finland and not the genuine Swiss or Emmenthaler cheese. Otherwise there would be no application for the provision in the trade agreement.

While the three witnesses for the defendant expressed the opinion that the imported cheese in this case did not have the eye formation characteristic of the Swiss or Emmenthalter cheese and the two witnesses for the plaintiff expressed the opposite opinion, such testimony is the class of evidence which is not binding on the court. It is the duty of the court to determine the common meaning of words irrespective of the opinions expressed by the witnesses. *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117; *United States* v. *Marshall Field & Co.*, 19 C. C. P. A. (Customs) 331, T. D. 45483; *United States* v. *E. H. Sargent & Co., Inc.*, 20 C. C. P. A. (Customs) 172, T. D. 45774; *United States* v. *Florea & Co.*, 25 C. C. P. A. (Customs) 292, T. D. 49396; *United States* v. *Astra Bentwood Furniture Co.*, 25 C. C. P. A. (Customs) 340, T. D. 49434.

Under the provisions of section 350(a) of the Tariff Act of 1930, as amended, and the President's letter above referred to, the products of Denmark are entitled to the same rates of duty as like products from Finland described in the trade agreement, and, as the cheese herein involved is similar and has the same eye formation as the Finnish type of Swiss cheese, it must have been intended to grant this product the same rate of duty as the like product from Finland.

We find from the evidence that the cheese herein involved has the "eye formation characteristic of the Swiss or Emmenthaler type," within the meaning of that expression in the trade agreement with Finland and we hold that it is dutiable at 5 cents per pound, but not less than 20 per centum ad valorem, under the provisions of that trade agreement. The protest is sustained. Judgment will be entered in favor of the plaintiff.