(C. D. 1572)

CLOVER LINEN CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 30, 1953)

*Benjamin A. Levett* (*Meyer Ohlbaum* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard M. Kozinn*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge:   The suit listed above presents for our determination the question of the proper classification of certain imported pot holders.   The collector classified the merchandise as "Cotton

knit articles, in part edging," and levied duty thereon at the rate of 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930. Plaintiff claims said merchandise to be properly dutiable at only 45 percent ad valorem under paragraph 917 of the Tariff Act of 1930, as articles of all kinds, knit or crocheted, wholly or in chief value of cotton, or at the rate of 40 percent ad valorem under paragraph 923 of said act, as "All manufactures, wholly or in chief value of cotton, not specially provided for."

At the trial, three samples of the involved pot holders were admitted in evidence and marked collective exhibit 1. Two of these samples are round in shape, measuring approximately 6¼ inches in diameter. The third sample is rectangular in shape, measuring approximately 6¼ inches by 5¾ inches. The thread used in producing these pot holders is beige in color. Around the edge of these pot holders has been applied certain stitches. In two of the samples these stitches are produced with green thread, and in one the thread is blue in color. It was testified, however, that these pot holders were imported in three colors, red, blue, and green, which are the principal kitchen colors.

The plaintiff offered the testimony of one witness, Arthur Leeds, who stated that he had been president of the plaintiff corporation since its inception in 1944; that it was an importer of decorative linens; that he saw the merchandise when it was imported; and that the samples offered in evidence correctly represent the merchandise. The witness stated further that the involved merchandise was produced and sold exclusively as a pot holder, and that a pot holder was "an implement to prevent your hand from getting burned in removing something from the stove." He also testified that the material of which these pot holders are made is cotton yarn; that they are crocheted; and that the purpose of the colored threads around the edges is to prevent the pot holder from completely unraveling and also to lend a little eye appeal to the merchandise.

On cross-examination, the witness testified that collective exhibit 1 is not a complete article without the green edging, and that if the edging were off "I would say it would unravel quickly, yes."

Miss Alice Carroll testified for the defendant that she was connected with Good Housekeeping Magazine; that she was the author of Good Housekeeping Needle Practice; that the body of collective exhibit 1 was a double-crocheted stitch, using mercerized cotton, and that the green border was a picot-edge stitch; that she had personally made or created stitches such as both the picot edge and the double-crochet stitch; that based upon her experience she would say that collective exhibit 1 would be a complete article without the green edge.

The witness further testified that all crocheted articles can have a fast edge whenever you finish it, and you can finish this at any point you want to. In response to an inquiry by the court, the witness explained how the end of the beige thread had been tied to the end of the green thread and the crocheting continued without locking the stitch or the edge; that the green edge is a picot edge which serves no utilitarian purpose, and is merely decorative; that collective exhibit 1 is a pot holder without the edging; and that it would not unravel if it normally ended prior to the green edge.

On cross-examination, the witness testified that no crocheted article can be used without a locked stitch.

X Q. So this could not have been used if you had taken the colored stitch off and had not locked it, is that correct?—A. Yes.

The witness also testified that the pot holder would have been a pot holder with the colored threads removed from the edges; that the colored threads merely give a decorative effect; and that the pot holder would not have unraveled if the green thread had not been applied "Provided I pulled the thread through as one has to do to finish any type of crocheting."

Based upon this record, counsel for the plaintiff contends that the cases of *Davies, Turner & Co.* v. *United States*, 39 C. C. P. A. (Customs) 76, C. A. D. 466, and *Paramount Bead Corp., Walter A. Yokel* v. *United States*, 19 C. C. P. A. (Customs) 385, T. D. 45522, require a holding that the involved pot holders are not in part of edgings within the meaning of that term in paragraph 1529 (a), and are, therefore, not dutiable at the rate assessed under said paragraph. With this contention we cannot agree.

In the *Davies, Turner* case, *supra*, the Court of Customs and Patent Appeals had under consideration the question of whether certain cheesecloth was in part of fringe. In holding that said cheesecloth was not in part of fringe, the court said:

We are convinced that the connecting threads are not ornamental and cannot, in a tariff sense, be properly considered as fringe within the common meaning of the term. The so-called "fringe" here involved results from the omission of some of the weft threads in the weaving of the cheesecloth and cutting the connecting threads to produce the individual sections. The reinforcement of the edges, as above mentioned, does not, in our opinion, constitute ornamentation. We do not believe that a piece of cheesecloth, manufactured for the lowly use of surrounding 200 pounds of curd as it is lifted from a kettle, should be considered ornamental simply because there is reinforcement at its edges for the purpose of strengthening the cloth.

After quoting several definitions of the word "fringe," the court said further:

It seems to us that those definitions clearly indicate that the term "fringe" as used in the involved act carries with it the quality of being ornamental. Even

though an article may be incidentally ornamental, if its primary purpose is utilitarian, it may not properly be considered as ornamental. *Paramount Bead Corp., Walter A. Yokel* v. *United States,* 19 C. C. P. A. (Customs) 385, T. D. 45522. There can be no question but that the primary purpose of the involved merchandise is utilitarian.

An examination of paragraph 1529 (a) carries conviction to our minds that all of the articles *eo nomine* set out are ornamental and for the embellishment of the person or the house. Surely, it cannot be that the coarse cheesecloth lengths out of which the issue here arises can be sensibly classed with the articles named in that paragraph.

In *St. Andrews Textile Co., Inc.* v. *United States,* 32 C. C. P. A. (Customs) 117, C. A. D. 294, the merchandise was described in the brief of appellant as follows:

The merchandise consists of bolts of woven wool goods 65 inches in width. The weaving was done in such manner that by a process of cutting mufflers may be produced therefrom. This result was obtained by weaving a binding thread known as a selvage in the warp every 13 inches, so as to indicate the width of the mufflers desired, and by omitting a number of weft threads at intervals which omission determines the length of the mufflers. By cutting along the selvages and across the warp where the weft threads are omitted finished mufflers are produced. It is customary to cut across the warp where the filling has been omitted in such a way as to leave loose ends of the warp threads on each muffler.

After quoting the above description of the merchandise, the Court of Customs and Patent Appeals stated:

To the above description it may be added that the loose ends of the warp threads left after cutting across the warp where the weft (or filling) threads have been omitted constitute a fringe at each end of the muffler.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

If, before importation, the mufflers had been cut from the bolts along the lines clearly indicated in the woven product and imported as individual entities, such mufflers would have been in part of fringes although the fringes were produced in the process of weaving and had no existence independent of the other parts of the fabric.

We accept as correct the holding in the *Davies, Turner* case, *supra,* "that the connecting threads are not ornamental," and, therefore, in a tariff sense cannot be considered as fringe. In the instant case, however, the facts are different. Here, the body of the pot holders is produced by the use of a beige-colored thread and a double-crochet stitch. When this process had reached the point where the pot holder was of the desired size, all that remained to be done in order to complete the operation was to make a locked stitch with the beige thread. At this point, the pot holder would have prevented the burning of the hand while removing articles from the stove just as completely as it did after the additional and differently colored threads were added around the edges by tying the end of the beige thread to the end of a red, blue, or green thread, and then, by means of a picot-

edge stitch, working a fancy pattern or design around the edges of these pot holders. When this fancy pattern or design was finished or completed, it was then necessary to employ the same locked stitch to prevent unraveling as could and would have been employed to prevent the beige thread from unraveling when the pot holder *per se* had been completed.

An examination of the samples in evidence, which counsel for the plaintiff insists are "potent witnesses," is convincing that these additional picot-edge stitches around the edges of these pot holders are decorative and ornamental in character. It is also established by the record that these additional picot-edge stitches were not necessary to finish or complete the pot holders. It is plaintiff's contention that these pot holders were not complete or finished articles until these picot-edge stitches were placed thereon and then a locked stitch made at the end of the thread used to produce these picot-edge stitches. The fact is that this same locked stitch could have been made at the end of the beige thread used to produce the pot holders. Therefore, we are unable to accept the theory of counsel for the plaintiff that these additional picot-edge stitches and the locked stitch at the end thereof were necessary to complete the pot holders.

The fact which distinguishes the present case from the *Davies, Turner* case, *supra*, is that in the *Davies, Turner* case the "connecting threads" were not ornamental, whereas, in the instant case, the picot-edge stitches are decorative and ornamental in character. No one in the *Davies, Turner* case, *supra*, ever contended that the cheesecloth therein was, in and of itself, decorative or ornamental, but it was the protruding or "connecting threads" which we considered to be ornamental. In the instant case, we have no hesitancy in holding that the pot holders *per se* are not ornamental in character and that they are primarily articles of utility. However, it was not these pot holders *per se* which the collector classified as edgings, but the decorative and ornamental forms, figures, or designs produced by the picot-edge stitches which were classified as edgings.

In the *Paramount Bead* case, *supra*, the question was whether or not pull chains for electric lights, which primarily served a utilitarian purpose and were only incidentally ornamental, should be classified as ornaments. After quoting two definitions of the term "ornaments" from recognized dictionaries, and in holding the merchandise not to be ornaments, or articles ornamented with beads, the Court of Customs and Patent Appeals stated:

The Government relies upon the foregoing definitions which are noted in the respective dictionaries as archaic, but we are compelled to conclude that such definitions do not convey the common meaning of the term "ornament" as now understood. In other words, we hold that an article that has a primary utilitarian purpose, although it may be incidentally ornamental, can not be classified as an

ornament under the provisions of paragraph 1430. To hold otherwise would bring a multitude of other articles having utilitarian uses within the provisions of this paragraph. While this court has never expressly declared that an article having a utilitarian use, which article is incidentally ornamental, may not be classified as an ornament under said paragraph 1430 and its predecessors, it has so held in effect in the case of *United States* v. *Lines & Warne,* 5 Ct. Cust. Appls. 552, T. D. 35193.

        *         *         *         *         *         *         *

Inasmuch as the beads in question are used as a component material in the manufacture of the articles, without which the articles would be incomplete for the purpose for which they are designed and used, and primarily serve a utilitarian purpose, we must hold that Exhibits 1 and 4 are not "articles * * * ornamented with beads," and therefore are not within the last part of paragraph 1430, but are dutiable, as claimed by appellants, under that part of paragraph 1403 above quoted. * * *

This record is not sufficient to establish that the collector's classification of the merchandise as being in part of edgings was erroneous or that any of the claims made by the plaintiff are correct.

We are not impressed by the argument of counsel for the plaintiff that after the operator had produced the pot holders by use of the beige thread it was then necessary, in order to complete the pot holders for the operator, to proceed to place upon the edge of these pot holders forms, figures, or designs ornamental in character. When the operator reached the end of the beige thread, the pot holders were complete except for making a locked stitch with the beige thread in order to keep the crochet from unraveling. Whether or not this locked stitch was made or placed at the end of the beige thread or at the end of the colored thread used to produce the ornamental and decorative forms, figures, or designs was a matter of choice. In either event, the same locked stitch could or might have been employed to accomplish the same result.

For the reasons stated and following the authorities cited, all the claims of plaintiff are overruled. Judgment will be rendered accordingly.