**RIFKIN TEXTILES CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 3752 Protest Nos. 66/11878–16718–64 etc.**

United States Customs Court, Second Division.
March 31, 1969.

Curran, Mahoney, Felix & Stim, New York City, (Menahem Stim, New York City, of counsel), Brooks & Brooks, New York City, assoc. counsel (J. Joseph McDermott, New York City, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Arthur Steinberg, New York City, trial attorney), for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The merchandise involved in this case consists of woven wool fabrics imported from Italy during March, April, and May of 1964. It was assessed with duty under item 336.50, Tariff Schedules of the United States, at 37.5 cents per pound plus 60 per centum ad valorem, as woven fabrics of wool, other. It is claimed to be dutiable under item 353.50 at 42½ per centum ad valorem, as ornamented fabrics in the piece.

The pertinent provisions of said tariff schedules are as follows:

Woven fabrics, of wool:

\* \* \* \* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \* \* \* \*

Other:

336.50    Valued not over $1.26⅔ per pound ..........37.5¢ per lb.
+ 60% ad val.

\* \* \* \* \* \* \* \* \* \*

353.50    Ornamented fabrics, in the piece, and ornamented
motifs, not specially provided for .........42.5% ad val.

---

The headnotes to schedule 3 provide in part:

3. For the purposes of the tariff schedules—

(a) the term *"ornamented"*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A) embroidery, and pile or tufting, whether wholly cut, partly cut, or not cut, and

(B) other types of ornamentation, but not including functional stitching or one row of straight hemstitching adjoining a hem;

\*   \*   \*   \*   \*   \*

(b) ornamentation of the types or methods covered hereby consists of ornamenting work done to a pre-existing textile fabric, whether the ornamentation was applied to such fabric—

(i) when it was in the piece,

\*   \*   \*   \*   \*   \*

and if such textile fabric remains visible, at least in significant part, after ornamentation:   \*   \*   \*

The issue before the court is whether the merchandise in its imported condition is an "ornamented fabric" within the meaning of item 353.50, *supra.*

A sample of the merchandise was received in evidence at the trial as plaintiff's exhibit 2. It consists of a length of green cloth about 60 inches wide. About a quarter to a half inch from one edge there appears, at intervals of 18 inches, stitching in yellow and green yarn consisting of four loops in yellow with a center of green, somewhat resembling a four-petaled flower. The stitching measures about an inch to an inch and a half in diameter. It is irregular and crudely done.

Another piece of cloth from the importation was received in evidence as defendant's exhibit A. It is a smaller piece of black material having yellow stitching in the form of three loops at almost the edge of the fabric.

Plaintiff called four witnesses who had had experience in the embroidery field. Mr. Oscar Zinn, president of Rifkin Textiles Corp., testified that he had been with the corporation for about 8 years and that its business is the importation of woolen textiles mainly from Italy. He styles, designs, purchases, and is in charge of all sales of woolen piece goods which his firm imports. Previous to his association with Rifkin Textiles he had been a dress and sportswear manufacturer for over 20 years. He was familiar with the merchandise described on the invoice covered by entry No. 1011937 (plaintiff's exhibit 1) and testified that exhibit 2 represented such merchandise. Although he did not examine every piece of goods that came in, he said that exhibit 2 was illustrative of all of the merchandise involved here. He testified that he has had experience with embroidered merchandise; that he has supervised the ornamentation of fabrics with embroidery and has seen hand embroidery, as done on exhibit 2. Based on his experience, dictionary definitions, and the way the stitching looked on the goods, he stated that the stitching on exhibit 2 is an embroidered flower consisting of hand needlework; that it is part of the fabric and not the selvage; that it ornaments and embellishes the fabric, and that all of the merchandise herein is embroidered and is of the same caliber as exhibit 2.

Mr. Zinn testified that he had ordered the merchandise involved herein and that he had specified by sample that every yard of the goods be embroidered. He stated that each of the flowers falls in a little different position on the cloth, but that they do not fall on the selvage which is about one-eighth of an inch from the end of the goods, and can be ripped off. He testified that the stitching on exhibit A comes close to the selvage but is not on it. He had never removed the stitching from the goods prior to delivery to customers; it was

not a condition of sale that such stitching be removed.

Plaintiff's second witness was Herman J. Sapirstein, president of Jaguar Embroidery Co., which is engaged in doing embroidery work for the trade. He had previously worked for other embroidery houses for 3 years; has been with Jaguar for 10 years, and does the selling, the production work, and supervises the entire factory. He belongs to The Pleaters and Stitchers and Embroiderers Association, a local organization of embroidery shops having as members a few hundred factories in the New York City area.

He was shown plaintiff's exhibit 2 and testified that the stitching consisted of hand-embroidered flowers; that they were part of the fabric and not the selvage and that they ornamented the fabric. In his experience, the embroidery placed on this fabric is similar to that done in the industry in connection with wool pieces. He had done similar work with bigger or smaller flowers. However, in his experience he had not seen other piece goods like exhibit 2, i. e., with flowers along the edge on one side. In fact, he did not usually handle piece goods. Normally fabric comes to him cut up ready for him to work on.

When asked the ground of this testimony that these piece goods are ornamented, he stated that it was his personal opinion based on the work he had done and seen all these years.

Plaintiff's next witness was Samuel Savitsky, who owns a machine embroidery business called "Miss Embroidery." He has been in the embroidery field for 50 years and is a designer and salesman and also works the machines. He is a member of The Pleaters and Stitchers and Embroiderers Association.

He testified that the flowers on exhibit 2 were hand-embroidery and that they bring out the fabric and beautify it. Based on his experience of 50 years he was of the opinion that the embroidery ornamented and embellished the fabric. On cross-examination, however, he stated that he did not do hand-embroidery nor handle piece goods but that he embroidered cut-up material such as backs, fronts, and sleeves. The type of embroidery he does is entirely different from that on exhibit 2.

Plaintiff's last witness was Bob H. Buchalter who is connected with Rousso Sportswear, for whom he does styling and buys piece goods. He has dealt with embroidery and done styling for about 40 years. The object of his work is to embroider material to give it a beautiful look, to ornament it.

Mr. Buchalter testified that he had handled woolen piece goods similar to exhibit 2; that the flower was hand-embroidered; that it ornaments the fabric and beautifies it, and that it adds to the finished garment. He admitted that he had never seen exhibit 2 made into a garment but said that he had seen similar merchandise so made. He had embroidered fabric with flowers along the edge and used it for dresses. He explained:

> * * * I can take this here design and place it alongside, in what you call a fly-front, having the three flowers running this way, from the neck piece down to the bottom. I don't have to have the entire piece covered with embroidery. Three pieces of this nature is enough. * * *
>
> * * * * * *
> * * * Or I can take a two-piece garment, such as a jacket and skirt, and make a fly-front on the skirt.

He said that he had never actually done this but that he had done something similar.

Defendant's first witness was Jack Schwartz, executive director of The Pleaters and Stitchers and Embroiderers Association, who had been employed by that association for a little over 25 years. He said that the association had about 265 members consisting of firms which do pleating, stitching, and embroidery in New York City. The witness' duties consist of running the office and overseeing various activities, such as credit check-

ing, styling, predicting embroidery trends, and trying to inform members as to the types of embroideries and trimmings available next year. The association maintains a library of swatches of various types of embroidery and he selects every one of them. He is familiar with the operations and activities of the members of the association, has been in their shops very frequently, and is familiar with the types of embroidery being done in the trade. Although he had never personally worked on embroidery or handled embroidery work, he had observed such work in process in the designing stage and in the finished product over a period of 25 years.

From his point of view, an ornamented fabric is one that has a design that is there for the purpose of creating a focal point for the eye, so that when the eye looks at the dress or coat it focuses on the piece of embroidery which is in the design. He stated that exhibit 2 does not fall within that concept. In his view, although each of the flower motifs is a piece of hand-embroidery, in order for the fabric to be considered embroidered it would have to have some attractive form or design, and some function in the finished garment. He said that the amount of embroidery which must be on the fabric is a matter of esthetics; that flowers 18 inches apart do not ornament the fabric but flowers 6 inches apart would do so. He added, however, that even if these flowers were 6 inches apart, the design would not be sophisticated enough for today's market.

Defendant's next witness was Edwin Wilkinson, director and consultant to the National Association of Wool Manufacturers. He testified that he was educated at the Philadelphia Textile School, had worked at a mill in Manayunk and thereafter at Pacific Mills where he was head of the upholstery department, weaving woolen and worsted goods. In 1933 he joined the National Association of Wool manufacturers, an organization comprised of about 185 firms in the production and distribution of wool products in the United States. The witness

testified that he has been in the textile industry all his adult life; that he has observed the practices and operations of the industry, and that as a result of his education and experience, he has become familiar with the character and nature of fabric produced by the apparel trade, including ornamented wool fabrics. In his opinion, an ornamented fabric is one which contains a pattern or design, usually a repetitive pattern, on a substantial part of the surface of the fabric.

He was shown plaintiff's exhibit 2 and stated that it appeared to be a sample cut from a bolt 50 to 80 yards in length; and that it had a selvage and discernible pin marks. After examining the sample he stated that the selvage was in the magnitude of a quarter of an inch and that the pin marks were further in the piece. Pin marks, according to the witness, result from the process of holding the goods to the required width in finishing so that there are no wrinkles; they are not desirable when they extend beyond the selvage. The purpose of the selvage is to strengthen the goods and keep them flat, but it is usually disposed of when the fabric comes to the cutting table or is turned under where it does not show. It is normally not regarded as part of the fabric.

Mr. Wilkinson testified that the flower designs on exhibit 2 impinge on the selvage, but the biggest part is on the fabric. He considered them to be embroidery but said they did not embellish the fabric. In his opinion, exhibit 2 is not an ornamented fabric, since the ornamentation is not substantial or significant enough to transform the goods into an embellished fabric. The question is not the proximity or number of the flowers but their location and distribution. In his opinion, what adorns a dress or what adorns piece goods are entirely different.

Defendant's last witness was David Krauss, assistant to the president and general manager in charge of production of the House of Perfection, Inc. He testified that he has been employed by that firm for 11 years and that its business

is the manufacture and sale of womens' and childrens' wearing apparel. As general production manager he is responsible for the total end product, its cost, profitability, quality, and all the components that go into it.

Mr. Krauss testified that he had purchased the merchandise represented by exhibit 2 from Rifkin Textiles, through Mr. Oscar Zinn. In the course of the negotiations, Mr. Zinn offered for sale an undetermined quantity of this fabric at a given price, somewhere between $1.05 and $1.10 a yard, at a given width of 58–60 inches. Mr. Krauss then stated that he would buy in the area of 20,000 yards and defined the quantity and color and the date by which he would like to receive it. At the time of the confirmation of order, Mr. Zinn stated "These goods will be delivered to you with these embroidered flowers." Mr. Krauss stated that his company had no need for flowers but Mr. Zinn said they were part and parcel of the goods—that that was the way they were being sold. Mr. Zinn stated further that the goods would have the contracted number of inches of cuttable, usable width, discounting the embroidery. The minimal delivered cuttable width, exclusive of the flowers, was to be 58 inches.

Mr. Krauss testified that the said merchandise was used to manufacture ladies' shift jumpers. He described the method of manufacture and stated that the embroidery portion of exhibit 2 was not included as part of the garment but was cut away and discarded.

Mr. Krauss stated that the flowers were attached to the fabric and that the merchandise he received was substantially similar to exhibit 2. He said that the flowers were most definitely hand-embroidered and that they could be considered an adornment. He would call exhibit 2 an embroidered cloth and said that according to Webster's definition, he would have to admit that embroidery was ornamental.

On the record presented, plaintiff claims that the merchandise in its imported condition was ornamented with embroidery and therefore was properly classifiable under item 353.50, *supra*. Defendant contends that the merchandise is not an "ornamented fabric" within the meaning of that provision. It concedes that the record establishes that the flower designs are embroidered but urges that the crucial question is whether or not the attachment of such designs to the edge of the piece has converted the fabric into an "ornamented fabric."

In support of its position plaintiff has quoted a number of definitions of the terms "embroider" and "ornament," which state in substance that "embroidery" is ornamental needlework and that "to ornament" is to embellish, adorn, decorate, bedeck, or beautify. Funk & Wagnalls New Standard Dictionary of the English Language (1956 and 1961 editions); Webster's New International Dictionary, Second Edition, Unabridged (1955 and 1957 editions); Webster's New Collegiate Dictionary (1950); The Oxford English Dictionary, (1933).

Plaintiff discusses in its brief many cases involving embroidery or ornamentation: United States v. Field & Co., 10 Ct.Cust.Appls. 183, T.D. 38550; United States v. Waentig, 168 F. 570, aff'd 174 F. 1023; United States v. Florea & Co., Inc., 25 CCPA 292, T.D. 49396; Michaelian & Kohlberg, Inc. v. United States, 22 CCPA 551, T.D. 47554; The Baylis Brothers, Inc. v. United States, 60 Cust. Ct. 336, C.D. 3383 (appeal 5320 pending); United States v. A. A. Vantine & Co., 166 F. 735, 92 C.C.A. 397; E. C. Carter & Son, Inc. v. United States, 38 Cust.Ct. 368, C.D. 1889. These cases indicate that for tariff purposes, in order that an article be regarded as embroidered, there must be ornamental, superimposed stitching which is the result of needlework. The issue in a number of those cases concerned what constituted *ornamental* stitching.

In United States v. Florea & Co., Inc., *supra,* the court pointed out (p. 297):

> * * * As before stated, in order that a given stitching be regarded as embroidery, it is essential that it should be ornamental and it is doubt-

ful if it could be regarded as ornamental unless the embroidery consists of a superimposed, raised effect, brought about by stitching some character, which by reason of its shape, color or other characteristic, in fact adds ornamental value to the article. Usually embroidery is not only made pursuant to a predetermined plan but it consists of an arrangement of characters, ornamental in effect, as distinguished from a random or haphazard placing of stitches. * * *

In that case the merchandise consisted of gloves containing stitching on the back. The court pointed out that the stitching was superimposed; that it was arranged systematically in accordance with a predetermined design, and had a raised or relief appearance. It stated (p. 300):

> * * * That the stitching on each of the gloves ornaments them in a desirable way and increases their attractiveness and salability is conceded. It is not claimed by any one that the stitching was intended to have or does have any purposes other than to ornament the articles.

In Michaelian & Kohlberg, Inc. v. United States, *supra*, the merchandise consisted of figured rugs. At each end the basic fabric extended about an inch beyond the pile and sewn into these extensions was some simple stitching claimed to be in the design of a Chinese dragon. The stitching was 5 inches in length, irregular in outline, and included two small blackish dots claimed to represent eyes. Four of five witnesses agreed that the stitching was done in conformity with a preconceived design and that it responded to well-known and judicially approved definitions of embroidery stitching. The other witness did not declare the stitches *per se* were not of the embroidery-stitch type, but said there was no actual design or reproduction of a dragon and he did not consider the stitching an embellishment. The court held that the testimonial record preponderated in favor of the importer upon the essentials required to constitute embroidery and that the sample should not be held to overcome the weight of the oral testimony with respect to its being an embroidered article.

The court also pointed out that paragraph 1529(a) of the Tariff Act of 1930 and its predecessors which covered, among others, embroidered articles, was invasive and applied to every embroidered commodity.

In the course of drafting the present Tariff Schedules of the United States, careful attention was paid to the anomalies and complexities of paragraph 1529 (a) of the Tariff Act of 1930 and a plan was evolved to eliminate the classification under provisions derived therefrom of articles involving commercially insignificant processing or component materials. (Tariff Classification Study, Schedule 3, p. 6) The study states (pp. 6–7):

> * * * As previously mentioned, paragraph 1529(a) provides for articles "wholly or *in part*" of lace, netting, braid, fringe, etc. The language "in part" has been interpreted as meaning in any part however small. Originally, the tendency of this language was to impose higher rates on the textiles affected, but the numerous provisions which have been "carved out" as a result of trade-agreement concessions sometimes embrace articles at lower rates of duty because a small piece of braid or other component, often concealed and functionless, has been incorporated therein. In addition, paragraph 1529(a) presently covers textile articles which have been embroidered or ornamented in certain ways. In the proposed provisions, the primary intention of paragraph 1529 (a) is preserved intact by the development of a broad concept of ornamentation which is set forth in the definition of "ornamented" in headnote 3. This term is used with uniform meaning throughout the provisions in the proposed schedules relating to textile articles. [Emphasis quoted.]

Under the proposed definition of "ornamented", textile articles would no

longer be assessed with rates of duty derived from paragraph 1529(a) on the basis of *concealed, functionless* pieces of braid, netting, etc. The rates derived from paragraph 1529(a) would apply *only if such materials were used primarily for ornamentation.* [Emphasis supplied.]

In additional explanatory notes and background materials to the Seven Supplemental Reports of the Tariff Commission, submitted to Congress, at its request, prior to the effective date of the Tariff Schedules, it is stated:

Item 353.50—*Ornamented fabrics.* The status of fabrics in the piece with a braid attached to the selvage is subject to a different test under this item than under the applicable existing tariff provisions. The existing requirement that the article merely be "in part of" braid is less exacting. Under the new provision, the braid must in fact ornament the fabric so that it becomes a type of ornamented fabric in an acceptable trade sense. *This would normally call for repetitive ornamentation throughout the length of the piece goods, not so affixed that it would in normal disposition be trimmed off or hidden.* [Emphasis supplied.]

These notes were cited by the court of appeals in Rifkin Textiles Corp. v. United States, 54 CCPA 138, C.A.D. 925, which involved the same items of the tariff schedules as are presently before this court. The merchandise in that case consisted of woven wool fabric having a braid securely sewn over each of the two selvage edges for the full length of the piece. The court held it was not "ornamented fabric", stating (p. 142):

We agree with the Government in that the issue in this case is not whether the braid on the selvage is ornamental but whether the braid ornaments the imported fabric in such a way as to make the merchandise an ornamented fabric. Applied to the circumstances of the present case, we find the term "ornamented fabrics" to be ambiguous, taking that word in the sense that the court is not entirely certain of the meaning of the statutory language when applied to the particular facts of this case. Therefore, resort to pertinent authoritative materials to ascertain the meaning of the term is permissible.

The majority below found, and we agree, that the testimony of the witnesses clearly establishes that the selvage is normally not considered a part of the surface of the fabric. Applying this finding of fact to the explanatory note contained in the Tariff Classification Study and in the Seven Supplemental Reports of the United States Tariff Commission, both quoted above, we conclude that the instant import is not ornamented fabric within the meaning of item 353.50 of the Tariff Schedules.

In another recent case, Platon Fabrics Corp. v. United States, 56 CCPA, C.A.D. 948, the merchandise consisted of woven wool fabric in the piece, having sewn along one selvage edge a 5-yard piece of braid. The merchandise was assessed with duty under paragraph 1109(a) of the Tariff Act of 1930, as modified, as woven fabrics of wool and was claimed to be dutiable under paragraph 1529(a), as modified, as fabrics in part of braid. It was argued that the language in the Seventh Supplemental Report of the Tariff Commission indicated a change of law and that the earlier paragraph 1529(a) could not have drawn any distinction between braids which ornament the fabrics and braids which were functionless. The court quoted the following argument from the Government's brief:

We also submit that even if the selvage were considered part of the fabric, the instant importation was properly classified. Braid on one of the selvages for 5 yards of 59 to 79 yard pieces of fabric cannot be considered to make the entire length of fabric in part of braid. The court need not shut its eyes to the commercial reality that the amount of braid herein would not constitute this merchandise in part of braid whether it be

compared with the merchandise involved in the earlier *Rifkin* case, or considered in light of the facts testified to in the later *Rifkin* case, C.A.D. 925.

The court then held:

In reviewing the arguments proposed, we cannot fail to note the significance of the just quoted passage from appellee's brief. Certainly the remaining 54–74 yards of the imported respective 59–79 yard pieces, which do not have the braid attached to their one selvage edge, would appear not to be in part of braid. The five yards of braid appears to bear no identifiable relationship, such as immediate proximity, function or ornamentation, to the remaining, unbraided, major portion of the fabric. Thus, the situation may be readily distinguished from the *Kronfeld* case in which the braid was applied to both the trousers and vest pockets of woolen suits and had an ornamental relation to the entire suit of which it was an essential portion.

We therefore agree with the reasoning of the court below that the selvage edge is not a part of the fabric and that the application of braid to the selvage edge under the conditions stated in the stipulation of facts does not warrant classification of the merchandise as fabric in part of braid.

In another recent case, The Baylis Brothers, Inc. v. United States, *supra*, the court held that smocked dress fronts were "ornamented" within the meaning of both the Tariff Act of 1930 and the Tariff Schedules of the United States. The court cited cases construing the term "embroidery" and the term "ornament" and stated:

No attempt will be made to coalesce these decisions in order to propound an interpretation of the word "ornamented" capable of application beyond the immediate issue. It is sufficient for present purposes that the decisions enable us to conclude, as we do, that

if the effect produced upon the dresses by stitching serves primarily a decorative as opposed to a useful function, the subject dress fronts are ornamented and by virtue of having superimposed stitching as a result of needlework are also embroidered.

It then concluded that the stitching, sewn into crisscross and other attractive patterns of sometimes contrasting colors, enhanced the decorative quality of the garments and added to the basic dress an appearance of beauty, adornment, and stylishness.

The sense of both headnote 3 to schedule 3 of the tariff schedules and the explanatory material in the Tariff Classification Study and Supplemental Reports is that in order for a fabric to be considered "ornamented", it must have embroidery, needlework, braid, or other types of ornamentation which are not utilitarian, but in fact ornament the fabric. The claimed ornamentation must not be concealed or functionless and must not be so affixed that in normal disposition it would be trimmed off or hidden. It must render the fabric a type of ornamented fabric in an acceptable trade sense.

The framers of the tariff schedules did not intend that the mere addition of embroidery-type stitching to a fabric should convert it *per se* into "ornamented fabric" for tariff purposes. As in the *Rifkin* case, *supra*, resort to the above cited authoritative materials is permissible in order to determine whether the fabric before us comes within the intended meaning of the term "ornamented fabric."

According to the witnesses and the exhibits, the merchandise here does have embroidery-type stitching thereon. Whether or not the stitching is embroidery *per se* need not be here considered, since the question is whether the fabric is an ornamented fabric. While plaintiff's witnesses testified that in their opinion the flowers ornamented and embellished the fabric, there is no evidence

that they bought, sold, or used such fabric as ornamented fabric. Some of them did not deal in piece goods. Apparently they regarded the stitching here as embroidery and therefore ornamental, and concluded that consequently the fabric was ornamented. However, there is no evidence that the fabric was acceptable to the trade as an ornamented fabric.

An examination of the samples, exhibits 2 and A, reveals that the flowers are close to the edge of the fabric and impinge on the selvage. It would appear difficult to use the material in a garment in such a way that the flowers would be visible. In fact, as Mr. Krauss testified, the flower portion was cut off and discarded when the imported merchandise was made into garments. While one of plaintiff's witnesses attempted to show that the fabric could be used in such a way that the flowers would appear on the finished article, his testimony is unconvincing. He had never utilized fabric such as exhibit 2 for this purpose, but referred vaguely to something similar.

As in the *Platon* case, *supra,* the stitching here appears to have no identifiable relationship, such as immediate proximity, function or ornamentation, to the remaining, unstitched, major portion of the fabric. In both the *Michaelian & Kohlberg* case and the *Baylis Brothers* case, *supra,* the stitching did appear on the final product.

From the entire record, it is evident that the stitching here is functionless, is insignificant commercially, is close to the edge of the fabric, and is on a portion which is normally trimmed off or hidden. The flowers do not in fact ornament the fabric in an acceptable trade sense. We conclude that this fabric is not "ornamented fabric" within the meaning of the Tariff Schedules of the United States.

For the reasons stated, the protest is overruled. Judgment will be entered for the defendant.