(C.D. 3815)

COLONIAL CORP. OF AMERICA *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 30, 1969)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff. *William D. Ruckelshaus,* Assistant Attorney General (*Glenn E. Harris,* trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise involved in these two suits which have been consolidated for trial consists of girls' cotton blue denim jean shorts imported from Hong Kong. These articles were classified as girls' wearing apparel, ornamented, under item 382.03 of the Tariff Schedules of the United States (TSUS) and assessed with duty at the rate of 42.5 per centum ad valorem. Plaintiff claims that said goods should have been classified under item 382.33 of said tariff schedules as other girls' wearing apparel, not ornamented, of cotton, and assessed with duty at the rate of 20 per centum ad valorem.

The relevant TSUS provisions are as follows:

382.03    Women's, girls', or infants' lace or net wearing apparel, whether or not ornamented, and other women's, girls', or infants' wearing apparel, ornamented___ 42.5% ad val.

Other women's, girls,' or infants' wearing apparel, not ornamented:
            Of cotton:
                    *   *   *   *   *   *   *
            Not knit:
                    *   *   *   *   *   *   *
382.33                      Other _____ 20% ad val.

The parties stipulated at trial that the basis for the collector's classification of the goods as "ornamented" was the double row of reddish stitching across the middle of each back pocket and further stipulated that this stitching served no utilitarian or functional purpose on the garment. Thus the issue was clearly posed, as whether this stitching justified classifying the jeans as "ornamented wearing apparel".

In support of their respective positions con and pro an affirmative answer to this question, each of the parties elicited the testimony of one witness.

For the plaintiff, the witness was Michael Freeman, who for the seven months immediately preceding the trial, was the merchandiser for the men's and boys' divisions of his company. His responsibilities in that position included purchasing the fabrics for, styling, and selling, men's and boys' pants. Prior to working for plaintiff he had been employed by Defiance Manufacturing Company for ten years and at the time that he left that concern he was performing duties similar to those he now fulfills for plaintiff. In the opinion of this witness an ornamented garment is one having an applique, similar to the type sewn on a knit shirt or golf shirt—"something that would enhance the garment, and improve its salability." He did not believe that the double row of stitching on the back pocket of a sample of the merchandise in question (plaintiff's exhibit 1) ornamented the garment since it did not enhance it. In response to the court's question as to what he meant by "enhance the garment" Mr. Freeman said he was referring to something that would make it look more salable, more attractive to the customer. He was unable to explain the purpose of the double stitching on plaintiff's exhibit 1 and stated "it doesn't represent anything to me. It is not functional, it is not enhancing the garment * * *."

Defendant's witness was Leroy Gustave Mehler, an employee of Blue Bell, Incorporated, the manufacturer of the "Wrangler" series of jeans. At the time of the trial, Mr. Mehler was the Northeastern Regional Sales Manager for the men's retail sales division, a position he had held for three and a half years, and for the five years prior to that time he had been in field sales in Pennsylvania. As Regional Sales Manager he personally worked with two or three major chains and supervised the sales activity of fifteen people. He regarded the "W" stitched on the back pocket of a pair of Wrangler jeans (defendant's exhibit A) as ornamental, since it performed no functional purpose (although it is a trademark) and did not add any constructional strength to the garment. He further stated that in his opinion stitching such as that on the back pocket of plaintiff's exhibit 1 and defendant's exhibit A was regarded in the trade as a form of embellishment. On cross-examination Mr. Mehler stated that he did not think that the stitching on the back pockets of plaintiff's exhibit 1 added to the beauty or elegance of the garment but on redirect expressed the opinion

that the jeans would have less sales appeal if the double row of stitching were removed since, at first glance, it gave the appearance of a reinforced pocket and also, "it is eye-catching from the standpoint of doing something to the pocket differently than a plain, straight pocket."

Although the two witnesses were thus at odds over the effect of the stitching on the jeans in question, their differences need not be resolved before we reach our conclusions herein. What we are called upon to determine is whether or not these articles are ornamented within the common understanding of that term. Common meaning is a question of law not fact. *Marvel* v. *Merritt*, 116 U.S. 11, *United States* v. *North American Mercantile Co.*, 17 CCPA 378, T.D. 43820; *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388. It is declared by the court, which may, when necessary, seek the aid of authoritative extrinsic sources to refresh its recollection as to such common meaning. *United States* v. *Tropical Craft Corp.*, 42 CCPA 223, C.A.D. 598; *United States* v. *C. J. Tower and Sons*, 44 CCPA 1, C.A.D. 626. Witnesses may be called and their testimony taken but such testimony is not binding. It is advisory only. *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 CCPA 24, C.A.D. 209; *Wheeler & Miller* v. *United States*, 10 Cust. Ct. 180, C.D. 749, aff'd 32 CCPA 22, C.A.D. 280.

Plaintiff's brief refers to definitions of "ornament" and "decorate" and concludes that these words are explained in such terms as "adorn", "deck", "bedeck", "embellish", and "beautify". Based on these criteria plaintiff contends that the jeans under consideration are not ornamented and asks rhetorically (at p. 4) :

> * * * How can one determine that a double row of stitching on the back pockets of girls' western styled jeans enhance their appearance so that they "beautify," "adorn," or "embellish" the jeans? Such functionless stitching does not rise to the dignity of ornamentation. One does not consider western jeans such as these involved to be susceptible of being ornamented.

While we might agree that it sounds somewhat incongruous to describe certain jeans as "ornamented wearing apparel", such a determination, without more, does not resolve the question before us.[1] The general rule is that whether or not an article is "ornamented" or "decorated" is a question of fact to be determined with reference to the particular article before the court. *United States* v. *Mutual China Co. et al.*, 9 Ct. Cust. Appls. 232, T.D. 38202. It is the result produced upon the article, and not the method of production, which determines the

---

[1] In our research we have likewise examined several definitions of "decorate", "ornament" and their synonyms and we find nothing inherent in the definitions themselves to preclude using the term "ornamented" (wearing apparel) in classifying certain jeans. While we are of the opinion that a lengthy examination of these terms is unnecessary here, we note in passing that the word "adorn" is itself defined as, "to render pleasing or attractive" (Webster's New International Dictionary of the English Language, 2nd ed. 1958) which might not be inappropriate to describe the effect produced by the stitching on the jeans in question. (See also Funk and Wagnalls New Standard Dictionary of the English Language, 1952.)

classification. *United States* v. *Todd & Co.*, 11 Ct. Cust. Appls. 50, T.D. 38690. Thus several articles which plaintiff might not consider "susceptible of being ornamented" have been found by the courts to be decorated or ornamented. For example, bottle caps (*Oscar Heyman & Co.* v. *United States*, 27 Treas. Dec. 316, T.D. 34844) and sprinkler tops (*Emile Utard* v. *United States*, 27 Treas. Dec. 399, T.D. 34888) embossed with a design have been held to be decorated; china plates imprinted with a trademark within two concentric circles were held decorated or adorned in *United States* v. *Bernard, Judae & Co.*, 4 Ct. Cust. Appls. 403, T.D. 32841; earthenware articles which had a glaze of but a single color were held decorated in *United States* v. *L. Straus & Co.*, 168 F. 569, 17 Treas. Dec. 266, T.D. 29648; agates sliced and partially dyed were held properly classified as earthy or mineral substances, partially manufactured, and decorated, in *United States* v. *N. M. Albert Co. et al.*, 41 CCPA 191, C.A.D. 549; and pocket-knives on whose handles was etched an arrow with a Delta-wing design inserted within the head thereof were held to be ornamented or decorated in *Ralph C. Morton, d.b.a. Southwest Athletic & School Supply Co. et al.* v. *United States*, 54 Cust. Ct. 107, C.D. 2516. Thus the important question is not what is the particular article being ornamented, but rather what is the effect on that article when some additional and non-functional feature is added to it

Headnote 3 (a) to schedule 3, TSUS provides:

3.  For the purposes of the tariff schedules—

(a)  The term "ornamented", as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i)  fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A)  embroidery, and pile or tufting, whether wholly cut, partly cut, or not cut, and

(B)  other types of ornamentation,

but not including functional stitching or one row of straight hemstitching adjoining a hem; * * *.

This headnote was discussed in *Blairmoor Knitwear Corp. et al.* v. *United States*, 60 Cust. Ct. 388, C.D. 3396, where the court said:

At this juncture, it is pertinent to observe that while the Headnote to which we have herein referred purports to define the term "ornamented", it does not actually do so. Instead it sets forth the circumstances under which fabrics and articles may be considered to be ornamented, and the types of embellishments which may accomplish that effect. * * *

As we view the Headnote explanation in the light of the situation at bar, fabrics and articles may be considered to be ornamented if they are embroidered or if ornamental threads other than one row of functional stitching are introduced in or upon them or if an ornamental edging is attached. But it remains to be determined what constitutes ornamentation in the first instance.

We have therefore sought some enlightenment as to the meaning of this term from prior judicial pronouncements in this general area.

In the case of *Clover Linen Corp.* v. *United States*, 32 Cust. Ct. 1, C.D. 1572, the merchandise in issue was potholders, which had been classified as "cotton knit articles in part edging". These articles were produced in the following manner: A beige-colored thread was employed to form the body of the potholder, which could have become a completed article merely by ending it with a locked stitch. Instead, a red, blue or green thread was fastened to the end of the beige thread, and worked into an edging consisting of decorative figures and designs. The same locked stitch which could have been used at the end of the beige thread was ultimately used at the end of the colored thread to prevent the threads from unraveling. In sustaining the collector's classification of the goods as "cotton knit articles, in part edging", the court found that the additional picot-edge stitches around the edges of the potholders were decorative and ornamental in character and were not necessary to complete the potholders.

*United States* v. *Bernard, Judae & Co.*, *supra*, involved white china plates upon which was imprinted the word "Cenco" within two concentric circles. The court found that the design was "so placed and printed as to be *attractive in color and design*, and become as well as a trademark a matter of adornment or decoration." [Emphasis supplied.]

Based on a consideration of the above cases it is apparent that courts do not always resort to such terms as "deck," "bedeck," "adorn," "beautify," and "embellish," either to determine that an article is ornamented or to describe it as such. In the case at bar we find nothing to make the stitching in question any less ornamental than the picot-edge stitching around the potholders in *Clover Linen*, *supra*, or any less "attractive in color and design" than the printing in *Bernard*, *supra*.

In a recent case involving provisions of both the Tariff Act of 1930 (paragraph 1529(a) ) and the tariff schedules (item 382.03, *supra*), wherein this court considered several previous cases dealing with ornamented articles, we said:

No attempt will be made to coalesce these decisions in order to propound an interpretation of the word "ornamented" capable of application beyond the immediate issue. It is sufficient for present purposes that the decisions enable us to conclude, as we do, that *if the effect produced* upon the dresses *by the stitching serves primarily a decorative as opposed to a useful function*, the subject

dress fronts are ornamented * * *. [*The Baylis Brothers, Inc.* v. *United States*, 60 Cust. Ct. 336 at 339–40, C.D. 3383 (Customs Appeal No. 5320 pending). (Emphasis supplied.)]

In *Rifkin Textiles Corp.* v. *United States*, 62 Cust. Ct. 316 C.D. 3752, we held that fabric having stitching somewhat resembling a flower, about ¼ to ½ inch from the edge, and at intervals of 18 inches, was not ornamented fabric within the meaning of the tariff schedules on the ground that the stitching was functionless, was insignificant commercially, was close to the edge of the fabric, and was on a portion which was normally trimmed off or hidden. There was no evidence that the fabric was acceptable to the trade as an ornamented fabric.

In the instant case, however, the stitching appears on the finished article in a conspicuous place. That it performs no utilitarian purpose has been stipulated. That it is decorative is evident from a viewing of the article itself, a review of the pertinent cases construing that term, and an evaluation of the testimony of the witnesses. We conclude that the classification of the jeans in question as "ornamented wearing apparel" within the scope of item 382.03, TSUS, was proper. All claims in the instant consolidated protests are therefore overruled. Judgment will be entered accordingly.